No. 2023-103

In The

# United States Court of Appeals for the Federal Circuit

In Re: NIMITZ TECHNOLOGIES LLC,

*Petitioner.*

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE IN CASE NOS. 1:21-CV-01247-CFC, 1:21-CV-01362-CFC, 1:21-CV-01855-CFC AND 1:22-CV-00413-CFC HONORABLE COLM F. CONNOLLY, CHIEF JUDGE

## BRIEF OF AMICI CURIAE POWER INTEGRATIONS, INC., DISH NETWORK L.L.C., AND ASSA ABLOY GROUP IN OPPOSITION TO PETITION FOR WRIT OF MANDAMUS

Frank E. Scherkenbach
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210-1878
Telephone: (617) 542-5070
*scherkenback@fr.com*

John Thornburgh
FISH & RICHARDSON P.C.
12860 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
*thornburgh@fr.com*

Michael R. Headley
FISH & RICHARDSON P.C.
500 Arguello St., Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
*headley@fr.com*

*Attorneys for Amici Curiae
Power Integrations, Inc., ASSA
ABLOY AB, ASSA ABLOY Inc.,
August Home, Inc., and HID Global
Corporation*

Lauren J. Dreyer
Jamie R. Lynn
BAKER BOTTS L.L.P.
700 K Street NW
Washington, DC 20001
Telephone: (202) 639-7700
*lauren.dreyer@bakerbotts.com*
*jamie.lynn@bakerbotts.com*

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
Telephone: (650) 739-7500
*hopkins.guy@bakerbotts.com*

Spencer Packard
BAKER BOTTS L.L.P.
910 Louisiana
Houston, TX 77002
Telephone: (713) 229-1888
*spencer.packard@bakerbotts.com*

*Attorneys for Amicus Curiae*
*DISH Network L.L.C.*

November 30, 2022

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2023-103 |
| **Short Case Caption** | In re: Nimitz Technologies LLC |
| **Filing Party/Entity** | Amicus Curiae Power Integration, Inc. |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/30/2022

Signature: /s/ John W. Thornburgh

Name: John W. Thornburgh

FORM 9. Certificate of Interest

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☐ None/Not Applicable |
| Power Integrations, Inc. | | Black Rock |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

FORM 9. Certificate of Interest

Form 9 (p. 3)
July 2020

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Backertop Licensing LLC v. Canary Connect, Inc., USDC D. Del. 1:22-cv-0572-CFC | Lamplight Licensing LLC v Ingam Micro, Inc., USDC D. Del. 1:22-cv-1017-CFC<br>Lamplight Licensing LLC v ABB, Inc. C.A. No. USDC D. Del. 1:22-cv-0418-CFC | Waverly Licensing LLC v. AT&T Mobility LLC, USDC D. Del. 1:22-cv-00420-CFC |
| Backertop Licensing LLC v. August Home, Inc., USDC D. Del. 1:22-cv-00573-CFC | Mellaconic IP, LLC v. Timeclock Plus, LLC, USDC D. Del. 1:22-cv-0244-CFC<br>Mellaconic IP, LLC v. Deputy, Inc., USDC D. Del. 1:22-cv-0641-CFC | Waverly Licensing LLC v. Granite River Labs Inc., USDC D. Del. 1:22-cv-00422-CFC |
| Creekview IP LLC v. Skullcandy Inc., USDC D. Del. 1:22-cv-00427-CFC<br>Creekview IP LLC v. Jabra Corp., USDC D. Del. 1:22-cv-00426-CFC | Swirlate IP LLC v. Quantela, Inc., USDC D. Del. 1:22-cv-00235-CFC<br>Swirlate IP LLC v. Lantronix, Inc., USDC D. Del. 1:22-cv-00249-CFC | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## ENTRY OF APPEARANCE

**Case Number:** 2023-103

**Short Case Caption:** In re: Nimitz Technologies LLC

**Instructions:** Refer to Fed. Cir. R. 47.3 for requirements governing representation and appearance in this court. Counsel must immediately file an amended Entry of Appearance if contact information changes and update information through PACER's Manage My Account. Non-admitted government counsel should enter N/A in lieu of an admission date. Use the second page to add additional counsel.

**Party Information.** List all parties, intervenors, amicus curiae, or movants represented by below counsel; "et al." is not permitted.

Amici Curiae Power Integrations, Inc., ASSA ABLOY AB, ASSA ABLOY Inc., August Home, Inc., and HID Global Corporation

| | |
|---|---|
| **Principal Counsel:** John W. Thornburgh | Admission Date: 12/21/1994 |
| Firm/Agency/Org.: Fish & Richardson P.C. | |
| Address: 12390 El Camino Real, San Diego, CA 92130 | |
| Phone: (858) 678-5070 | Email: thornburgh@fr.com |
| **Other Counsel:** Frank E. Scherkenbach | Admission Date: 4/4/1990 |
| Firm/Agency/Org.: Fish & Richardson P.C. | |
| Address: One Marina Park Drive, Boston, MA 02210-1878 | |
| Phone: (617) 542-5070 | Email: scherkenbach@fr.com |

I certify under penalty of perjury that (1) the submitted information is true and accurate and (2) I am authorized to enter an appearance by all other listed counsel.

Date: 11/30/22

Signature: /s/ John W. Thornburgh

Name: John W. Thornburgh

**FORM 8A. Entry of Appearance**

Form 8A (p.2)
July 2020

## [DO NOT SUBMIT THIS PAGE IF IT IS BLANK.]

| **Other Counsel:** Michael R. Headley | Admission Date: 01/13/05 |
|---|---|
| Firm/Agency/Org.: Fish & Richardson P.C. | |
| Address: 500 Arguello Street, Suite 400, Redwood City, CA 94063 | |
| Phone: (650) 839-5070 | Email: headley@fr.com |
| **Other Counsel:** | Admission Date: |
| Firm/Agency/Org.: | |
| Address: | |
| Phone: | Email: |
| **Other Counsel:** | Admission Date: |
| Firm/Agency/Org.: | |
| Address: | |
| Phone: | Email: |
| **Other Counsel:** | Admission Date: |
| Firm/Agency/Org.: | |
| Address: | |
| Phone: | Email: |
| **Other Counsel:** | Admission Date: |
| Firm/Agency/Org.: | |
| Address: | |
| Phone: | Email: |

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE ....... 1

ARGUMENT ..................................................................................... 5

I.     PRIVATE LITIGANTS SUCH AS AMICI HAVE A STRONG
INTEREST IN KNOWING WHO THE REAL plaintiff IS .................. 5

     A.     Waverly v. PI ................................................................. 5

     B.     Dragon v. DISH ............................................................. 7

     C.     Backertop v. August Home .......................................... 9

     D.     Chief Judge Connolly's Order Impacts These Cases . 11

II.    THE DISTRICT COURT'S ORDERS DO NOT VIOLATE standing
law, OR PRIVILEGE, AND ARE WITHIN the SCOPE OF THE
COURT'S inherent AUTHORITY ...................................................... 16

CONCLUSION ........................................................................... 18

i

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*,
 604 F.3d 1354 (Fed. Cir. 2010)..................................................................17, 18, 22

*Alliance for Good Gov't v. Coal. for Better Gov't*,
 998 F.3d 661 (5th Cir. 2021) ...............................................................................19

*Backertop Licensing LLC v. August Home, Inc.*,
 No. 1:22-cv-573 (D. Del.)...........................................................................14, 24, 26

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
 38 F.4th 1025 (Fed. Cir. 2022) .............................................................................22

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991)................................................................................................22

*CoreStates Bank, N.A. v. Huls Am., Inc.*,
 176 F.3d 187 (3d Cir. 1999)..................................................................................18

*Diamond Coating Techs., LLC v. Hyundai Motor Am.*,
 823 F.3d 615 (Fed. Cir. 2016)..........................................................................17, 21

*Dragon Intell. Prop., LLC v. Apple, Inc.*,
 C.A. No. 13-2058-RGA, 2015 WL 5298938 (D. Del. Sept. 9, 2015) ....................13

*Dragon Intellectual Properties, LLC v. DISH Network L.L.C.*,
 No. 13-cv-2066 (D. Del.) (Andrews, J.) ......................................................... *passim*

*Dragon v. DISH*,
 No. 22-1621, D.I. 40 (Fed. Cir. Oct. 27, 2022) (appeal pending)....................14, 19

*Elder v. Metro. Freight Carriers, Inc.*,
 543 F.2d 513 (3d Cir. 1976)..................................................................................23

*Insituform Techs., Inc. v. CAT Contracting, Inc.*,
 385 F.3d 1360 (Fed. Cir. 2004)..............................................................................21

*Iris Connex, LLC v. Dell, Inc.*,
 235 F. Supp. 3d 826 (E.D. Tex. 2017)...............................................................20, 21

*Mach. Corp. of Am. v. Gullfiber AB*,
  774 F.2d 467 (Fed. Cir. 1985) ................................................................20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014) ..............................................................................19

*Republic of Philippines v. Westinghouse Elec. Corp.*,
  43 F.3d 65 (3d Cir. 1994) .......................................................................23

*Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*,
  32 F.3d 851 (3d Cir. 1994) .....................................................................21

*Rohm & Haas Co. v. Crystal Chem. Co.*,
  736 F.2d 688 (Fed. Cir. 1984) ................................................................20

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*,
  944 F.2d 870 (Fed. Cir. 1991) ................................................................17

**Statutes**

28 U.S.C. § 1404(a) ...........................................................................18, 19

35 U.S.C. § 285 ......................................................................... *passim*

**Other Authorities**

Fed. Cir. R. 32(b) ................................................................................26

Fed. Cir. R. 32(b)(1) ...........................................................................26

Fed. R. App. P. 32(f) ...........................................................................26

Fed. R. Civ. P. 16(c)(1) .......................................................................19

## STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE[1]

Power Integrations, Inc. ("PI") is a semiconductor company based in San Jose, California. For the last 30 years, PI has been the leading developer and supplier of the chips that make modern power supplies—used to charge phones and other products—smaller, lighter, and more energy efficient. While PI has many patents of its own, here PI has been sued for alleged patent infringement in the Western District of Texas by Waverly Licensing LLC ("Waverly"), who is one of the plaintiffs in the related cases pending before Chief Judge Connolly in the District of Delaware. PI has a strong interest in knowing who the real party in interest is because it is apparent Waverly is a shell company designed to conceal the real party. For example, the "suite" address Waverly gives for its "principal place of business" in its complaint against PI is actually an open shelf in a Staples store.[2]

DISH Network L.L.C. ("DISH") is one of the top providers of paid video content services throughout the United States, including Delaware. Since 1996,

---

[1] *Amici*'s motion for leave accompanies this brief. While Fish & Richardson represents both Respondents and some *amici*, no party or party's counsel authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting this brief. No person other than amici, or its counsel, contributed money that was intended to fund preparing or submitting this brief.

[2] Waverly's case against PI is Case No. 6:22-cv-1144, filed October 31, 2022 in the Western District of Texas. On November 30, 2022, PI moved to dismiss that case for improper venue and filed a corresponding declaratory judgment action in the District of Delaware, Case No. 22-cv-1554. *Amici* ask this Court to take judicial notice of these related cases.

1

DISH has offered direct-to-home satellite service, i.e., programming that DISH transmits through satellites directly to its subscribers' premises throughout the United States, including Delaware. DISH has a strong interest in the subject matter of the proceeding.  Like Defendants-Respondents, DISH has been sued by patent assertion entities, similar to Nimitz Technologies LLC ("Nimitz"), in various districts across the United States, including Delaware.  Multiple such lawsuits are currently pending against DISH across the country.  In *Dragon Intellectual Properties, LLC v. DISH Network L.L.C.*, No. 13-cv-2066 (D. Del.) (Andrews, J.), DISH recently filed a motion to compel the contingency-fee agreement between the plaintiff-patentee (a patent-assertion entity) and its contingency-fee counsel, related to DISH's interest in recovering nearly $1.5 million in attorneys' fees under 35 U.S.C. § 285, which is pending as of this filing.

The ASSA ABLOY group consists of companies around the world that provide access solutions, products, and services related to entrance automation, trusted identities, mobile security, and more.  Their security-focused solutions are used globally in private homes, governments, and businesses operating across many industries.  The group's focus on these products and services has drawn the eye of IP EDGE-affiliated entities on multiple occasions, and always on meritless bases. IP EDGE-affiliated entities have sued members of the ASSA ABLOY group in at least six cases.

2

These cases have forced ASSA ABLOY group members to respond to meritless claims, often unnecessarily expending resources, only for the plaintiffs to dismiss their claims at even the slightest sign of resistance.  The waste of resources appears to be the purpose of IP EDGE's strategy, wielding the cost of defense in an attempt to extract low-level settlements.

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Identifying the real party in interest is essential for the judiciary, to comply with the Code of Conduct for United States Judges. But that is not all. Private parties such as *amici* also have a right to know who has sued them. This information is needed at least for the following purposes:

- To determine whether the purported "patentee" has standing;

- To permit application of estoppel, issue preclusion, and claim preclusion;

- To decide motions to transfer;

- To conduct discovery;

- To negotiate settlement;

- To reduce frivolous lawsuits by permitting parties to seek fees and costs from the responsible party.

Petitioner's argument that only "the patentee" need be identified begs the questions of who "the patentee" even is here. For example, it is far from clear the individual assignees in this case—who consider themselves passive investors—control the litigation or otherwise have standing. To the contrary, it appears all of these cases—and scores more—are controlled by an entity called IP Edge LLC. The information sought by Chief Judge Connolly is necessary to answer fundamental

4

questions, including the constitutional question of standing. The information is also necessary to determine which entity attorneys' fees should be assessed against in frivolous cases in order to give effect to the legislative purposes behind 35 U.S.C. § 285. Petitioner's privilege assertions are equally meritless since facts are not privileged. As detailed in a new 80-page opinion issued by Chief Judge Connolly just today,[3] courts have ample authority to require identification of real parties in interest, investigate affronts to the integrity of the judicial system, enforce their own rules, and serve the public interest. The petition should be denied.

## ARGUMENT

## I. PRIVATE LITIGANTS SUCH AS AMICI HAVE A STRONG INTEREST IN KNOWING WHO THE REAL PLAINTIFF IS

In this case, it is apparent Petitioner Nimitz is not the real patentee or real plaintiff, just as Waverly is not the real patentee or real plaintiff in PI's case and Dragon is not the real plaintiff in DISH's case. *Amici* will not repeat the briefing of the parties concerning Nimitz, but will give the Court additional information about cases that would be affected by the decision in this appeal.

### A. Waverly v. PI

The plaintiff in PI's case, Waverly, alleged in its complaint that it "is a limited liability company organized and existing under the laws of the State of Texas with

---

[3] *See* Del. Case 1:21-cv-1247-CFC, D.I. 32.

its principal place of business at 3333 Preston Road, Suite 300, Frisco, Texas

75034." However, that address is actually a Staples store, and Waverly's purported

principal place of business within that "suite" is an open shelf, as shown below:






*See PI v. Waverly et al*, District of Delaware, Case No. 22-cv-1554, D.I. 1 at ¶¶ 12-

13. As Chief Judge Connolly remarked at one of the hearings in this case, "if you

6

were representing in a pleading in my court that a P.O. Box was a suite, that would have some questions to be addressed . . . because that's misleading.  I prosecuted fraud cases as a prosecutor against folks that engaged in fraudulent schemes, you know, telemarketing schemes, in part, by using suite numbers for what were really P.O. Boxes."  Appx363 at 15:22-16:5.

The patent at issue in PI's case is U.S. Patent No. 10,938,246 B2 ("the '246 patent").  Waverly also asserted the '246 patent in the District of Delaware in cases against AT&T and Granite River Labs, among others.  *See* cases 1:22-cv-420-CFC and 1:22-cv-422-CFC, identified by Nimitz in its Certificate of Interest as "case[s] known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal."  In addition, an entity by the name of Creekview IP LLC has also filed lawsuits in Delaware regarding another patent in the same family as the '246 patent, U.S. Patent No. 9,608,472 ("the '472 patent"), including cases filed against Skullcandy and Jabra identified in Nimitz's Certificate of Interest.

### B.    Dragon v. DISH

In another case, *Dragon Intellectual Properties, LLC v. DISH Network L.L.C.* ("*Dragon*" or "*Dragon v. DISH*"), an admittedly non-funded, non-practicing patent-assertion entity, owned by a single shareholder, availed itself, through its counsel, of the judicial system's resources for nearly a decade in its pursuit of a meritless case

7

against DISH and others. *See Dragon v. DISH*, No. 13-cv-2066, D.I. 226, 268-1 at 7-8, 10, 18-19 (D. Del Nov. 18, 2022). Dragon hired its counsel on "full contingency, even including [] costs," because Dragon "obviously [] could not afford to spend [its] own money to enforce the patent." *Id.,* D.I. 226, at 37-78. And after securing its representation, Dragon saw its "role in the litigation [as] pretty much over," and allowed its counsel to take control of the case. *Id*. at 32.

Dragon's counsel proceeded to accuse DISH's products of infringement, but those products were easily proven to perform an element that the former patentee "clearly and unequivocally disclaimed" during prosecution. *See Dragon Intell. Prop., LLC v. Apple, Inc.*, C.A. No. 13-2058-RGA, 2015 WL 5298938, at *4 (D. Del. Sept. 9, 2015) (noting that the court "ha[d] only once seen a clearer case of prosecution disclaimer"); *see also Dragon v. DISH*, No. 13-cv-2066, D.I. 226 at 5 ("[T]he disclaimer is very clear; it precludes a finding of infringement by any of the defendants' accused products")

The District of Delaware declared the case to be exceptional and entered a judgment of over $3 million dollars in fees against Dragon, nearly $1.5 million of which was awarded to DISH. *Dragon v. DISH*, No. 13-cv-2066, D.I. 227, 244. Dragon, however, admitted in post-judgment enforcement discovery that it cannot satisfy *any* of the judgment against it. *Id.*, D.I. 268-1 at 10. Dragon's counsel, who controlled *and funded* the litigation, claims that they are outside of the scope of §

8

285 notwithstanding their control of and stake in Dragon's litigation and their responsibility for the case's exceptionality. *See Dragon v. DISH*, No. 22-1621, D.I. 40 (Fed. Cir. Oct. 27, 2022) (appeal pending); *see also id.*, No. 13-cv-2006, D.I. 268-1 at 30 (explaining that "everything" in Dragon's case "was paid by the law firm, even the filing fees and so on").

In an effort to secure its fee award, DISH sought post-judgment discovery under Federal Rule of Civil Procedure 69 to uncover the nature and extent of Dragon's relationship with its now-former counsel. *Dragon v. DISH*, No. 13-cv-2066, D.I. 267 at 2. But Dragon has largely impeded DISH's investigation into the matter, incorrectly claiming, as does Nimitz in the present case, that such information is privileged. *Id.* at 3. DISH moved to compel production of the contingency-fee agreement between Dragon and its counsel, seeking to uncover who should be held responsible for the case's exceptionality and the $1.5 million award owed to DISH, and that motion is pending. *Id.*, D.I. 266.

### C.   Backertop v. August Home

August Home, Inc. is a member of the ASSA ABLOY group. In April 2022, August Home was sued by Backertop Licensing LLC. *See Backertop Licensing LLC v. August Home, Inc.*, No. 1:22-cv-573 (D. Del.). Backertop's allegations lacked merit, and August Home explained the lack of merit to Backertop's counsel on multiple occasions, but August Home was forced to respond to the complaint

because Backertop refused to dismiss its case. After the parties expended resources fully briefing a motion to dismiss, August Home again demanded Backertop dismiss its case, and once again, Backertop refused.

Fortunately for August Home, the case was assigned to Chief Judge Connolly, and, as in the underlying case here, Judge Connolly ordered Backertop's counsel and managing principal to attend an evidentiary hearing. Shortly after the order issued but before the hearing, Backertop suddenly filed a still-pending voluntary motion to dismiss its case. August Home was thus forced to expend resources defending allegations that the plaintiff walked away from as soon as Judge Connolly started looking into the plaintiff's structure. And, at the hearing, the reason became clear: Backertop is also owned by a single individual, a paralegal from Fort Worth, and that individual was not involved with the matter; instead, IP EDGE and MAVEXAR LLC effectively controlled the entire litigation, including the retention and direction of counsel. Further, Backertop's principal testified that she is married to a Mavexar consultant, that Backertop has no bank account of its own, and that Backertop's limited revenues from its litigation campaigns were directly deposited into her own personal bank account.

In short, from the outset of the litigation, August Home had no remedy against an insulated, nearly judgment-proof plaintiff that filed a meritless case and walked

away at the first sign of trouble—but not before August Home, like its affiliates in the cases listed above, was forced to waste resources responding to the complaint.

### D.    Chief Judge Connolly's Order Impacts These Cases

It is apparent that, in each of these cases, a non-party is responsible for all these cases and more.  On information and belief, the real parties in interest in the cases listed in Nimitz's Certificate of Interest include IP Edge LLC and its affiliates Array IP LLC and MAVEXAR LLC.  Indeed, it appears IP Edge-associated entities have filed *over 4,000 cases* using over 200 different entities.[4]  Chief Judge Connolly's efforts to compel plaintiffs to provide information about the real parties in interest are necessary to get to the bottom of who is responsible for the cases listed in Nimitz's Certificate of Interest, as well as other cases, such as the ones filed against PI and DISH.

Moreover, as noted above, this information is not only necessary to ensure that district judges can fulfill their obligations under the Judicial Code of Conduct; it is also necessary for private parties such as *amici*.  For example, without the required information, it would be impossible to evaluate constitutional standing. Petitioner argues the label "patentee" resolves the matter.  Not so.  This Court has made clear labels are not dispositive: "We have not allowed labels to control by

---

[4] *See* https://insight.rpxcorp.com/entity/1034412-ip-edge-llc.

treating bare formalities of 'title' transfer as sufficient to determine that an 'assignment' of the entire exclusive right has occurred.  Rather, we have explained that, '[t]o determine whether a provision in an agreement constitutes an assignment or license, one must ... examine the substance of what was granted.'"  *Diamond Coating Techs., LLC v. Hyundai Motor Am.*, 823 F.3d 615, 618 (Fed. Cir. 2016).

In *Alfred E. Mann Found. for Sci. Research v. Cochlear Corp.*, 604 F.3d 1354 (Fed. Cir. 2010), the Court addressed the question of "whether the patent owner transferred away sufficient rights to divest it of any right to sue."  *Id.* at 1359.  The Court held the patent owner did retain standing despite transferring many rights normally associated with ownership to a licensee.  Namely, the owner had transferred the "exclusive, worldwide right to make, have made, use, lease, offer to lease, sell, offer to sell, and otherwise commercially exploit" the patent, for life; the first right to sue infringers, including the right to control such litigation and settle; and the right to sublicense.  *Id.* at 1357-58.  Nonetheless, the Court found that the owner retained enough rights for standing (reversing the district court), largely because the owner preserved the right to file and control litigation if the licensee declined to do so.  *Id.* at 1358, 1362.

In other words, a patent "is, in effect, a bundle of rights."  *Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA*, 944 F.2d 870, 875 (Fed. Cir.

1991).   Standing depends upon whether the plaintiff has enough of these rights. *Mann*, 604 F.3d at 1360.

Here, it is far from clear the nominal plaintiffs control their litigation, much less have enough of the "bundle" of rights to constitute ownership.   In one of the cases before Chief Judge Connolly, plaintiff's counsel admitted he never spoke to the plaintiff before filing suit (Appx362 at 10:5-7), and one plaintiff testified he was offered his patent to make "passive income" (Appx381 at 87:19-21).   Such lack of communication and "passive income" is not consistent with the type of "control" required by this Court's precedent.   The information ordered to be produced by Chief Judge Connolly is necessary to determine whether the purported plaintiffs even have standing.

In addition, private defendants such as *amici* need such information for numerous other purposes.   They need it to know whether the doctrines of estoppel, issue preclusion, and claim preclusion apply.   For example, claim preclusion requires "the same parties or their privities."   *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999).[5]   Defendants also need such information to evaluate venue under 28 U.S.C. § 1404(a), to conduct discovery, and to negotiate settlement. For example, the real party in interest could have relevant witnesses and documents,

---

[5] *Amici* cite Third Circuit law for non-patent issues since the underlying case is in Delaware.

13

and its location could affect transfer analysis under 28 U.S.C. § 1404(a). Defendants also need to be able to negotiate with the actual party controlling the litigation. And district courts need to be able to "require" the actual party representative with settlement authority to participate in settlement discussions before trial. *See* Fed. R. Civ. P. 16(c)(1).

Further, the information is needed to deter frivolous lawsuits and ensure effective remedies therefrom by permitting parties to seek fees and costs from the responsible party.[6] *Cf. Alliance for Good Gov't v. Coal. for Better Gov't*, 998 F.3d 661, 665-66 (5th Cir. 2021) (under Lanham Act's identical exceptionality fee-shifting provision, awarding attorneys' fees against an attorney "responsible for the conduct making a case exceptional"). Patent enforcement entities pose a unique threat to the judicial system by litigating meritless cases while attempting to shield themselves and their funders from liability under § 285 for the harm caused by their *only* business purpose: to enforce the patent through litigation. The legislative purpose of § 285, "to advance considerations of compensation and deterrence," to "further equitable considerations" and to "prevent gross injustice," cannot be truly effectuated without an identification and understanding of the entities controlling frivolous lawsuits. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572

---

[6] This issue is the subject of a pending appeal. *See Dragon v. DISH*, No. 22-1621, D.I. 27 (Fed. Cir. Aug. 9, 2022).

14

U.S. 545, 554 (2014); *Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 690-91 (Fed. Cir. 1984); *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 845 (E.D. Tex. 2017).

Nimitz incorrectly argues to the contrary (Pet. 18), but the judicial system's "duty to 'do justice' and countenance an accelerating misuse of our judicial system" (*Iris Connex*, 235 F. Supp. 3d at 833) would be ill served if "parties in interest or who might be making litigation decisions" face no repercussions for any harmful decisions they make (Pet. 18).

Without efforts like those taken by Chief Judge Connolly in the Nimitz case, defendants like DISH, who expend significant resources defending against meritless patent-assertion entity lawsuits, will be left with no recourse for recovering their § 285 fee awards.  Rather, in future cases involving under-funded patent-assertion entities, the company will receive money only as needed to maintain its suit and will quickly turn belly-up if fees are ever awarded against it, and the third party who stood to gain from the litigation will use the insolvent shell company as a shield. This is a sham that unfairly renders § 285 a one-way ratchet against defendants in patent-assertion entity cases.

This Court has long condoned investigating the relationship of third parties to the named parties for purposes like fees.  *Mach. Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 475 (Fed. Cir. 1985) (holding that the Court may assess fees under § 285

against a non-party agent of a disclosed principal "if his conduct supports a finding

that the case is exceptional"); *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385

F.3d 1360, 1374-75 (Fed. Cir. 2004) (affirming joinder of third party, in part because

he "was personally responsible for many, if not all, of the aggravating facts which

led this court to award attorney's fees and enhanced damages").  Here, without Chief

Judge Connolly's efforts, a strong and legitimate concern remains as to who would

pay the defendants' attorneys' fees for the Nimitz case if the case were found

exceptional.  *See Iris Connex*, 235 F. Supp. 3d at 846.

## II.    THE DISTRICT COURT'S ORDERS DO NOT VIOLATE STANDING LAW, OR PRIVILEGE, AND ARE WITHIN THE SCOPE OF THE COURT'S INHERENT AUTHORITY

As detailed above, standing law actually supports denying the petition rather

than granting it.  The information required by Chief Judge Connolly is necessary to

*determine* standing, and Petitioner is wrong to rest on the label "patentee."

*Diamond*, 823 F.3d at 618.

Likewise, Petitioner is wrong that Chief Judge Connolly's orders have

violated privilege.   It is black letter law that "privilege extends only to

*communications* and not to facts." *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*,

32 F.3d 851, 862 (3d Cir. 1994) (emphasis in original, quoting *Upjohn Co. v. U.S.*,

449 U.S. 383, 395-396 (1981)).  Here, the facts surrounding who controls the

plaintiff and has the other rights in the patent "bundle" are not privileged.  Indeed, they could not be if cases such as *Mann* are to be decided.

Moreover, the law—including this Court's Rule 47.4(a)(2), Federal Rule of Civil Procedure 17 and the Code of Judicial Conduct for United States Judges—makes clear courts have the authority to require identification of real parties in interest.  Doing so may in fact be *necessary* to ensure compliance with the Code of Judicial Conduct for United States Judges.  *See, e.g.*, Code of Judicial Conduct for United States Judges, 69 F.R.D. 273, 277 (1973) (requiring disqualification if a judge "knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in . . . any [] interest that could be substantially affected by the outcome of the proceeding"); *see also Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F.4th 1025 (Fed. Cir. 2022) (requiring district court judge to recuse himself after learning of his wife's ownership of party stock).  Court also have broad inherent authority to investigate ongoing and pervasive threats to the integrity of the judicial system, as doing so ensures the integrity of the Court.  *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'").

This inherent authority encompasses the court's authority to enforce its own rules, including those that "regulate the professional conduct of members of its bar." *Elder v. Metro. Freight Carriers, Inc.*, 543 F.2d 513, 518 (3d Cir. 1976). Relevant to Chief Judge Connolly's inquiry are the Model Rules of Professional Conduct of the American Bar Association, which prevent an attorney (a non-party) from subsidizing his client's litigation; receiving third-party compensation unless the lawyer has taken steps to ensure "there will be no interference with the lawyer's independent professional judgment and there is informed consent from the client;" and from acquiring a proprietary interest in the litigation, which may be brought about by "champerty" or "maintenance." *See* MODEL RULES OF PRO. CONDUCT r. 1.8(e), (f), and (i); *see also id.*, cmt. [10], [14], and [19] (AM. BAR ASS'N 1983).

Courts also have the inherent authority to investigate the truthfulness of statements made to them. *E.g. Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 (3d Cir. 1994). Here, investigating the truth about statements made to the court (*e.g.*, claims about principal place of business and real parties in interest) is exactly what Chief Judge Connolly is doing. Nimitz's efforts to hide those truths should not be countenanced.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should deny Nimitz's petition.

Dated:  November 30, 2022          Respectfully submitted,

By: */s/ John W. Thornburgh*
    Frank E. Scherkenbach
    FISH & RICHARDSON P.C.
    One Marina Park Drive
    Boston, MA 02210-1878
    Telephone: (617) 542-5070
    *scherkenback@fr.com*

    Michael R. Headley
    FISH & RICHARDSON P.C.
    500 Arguello St., Suite 400
    Redwood City, CA 94063
    Telephone: 650-839-5070
    *headley@fr.com*

    John W. Thornburgh
    FISH & RICHARDSON P.C.
    12860 El Camino Real
    San Diego, CA 92130
    Telephone: 858-678-5070
    *thornburgh@fr.com*

    *Attorneys for Amici Curiae*
    *Power Integrations, Inc.,*
    *ASSA ABLOY AB, ASSA ABLOY Inc.,*
    *August Home, Inc., and HID Global*
    *Corporation*

19

By: */s/ Lauren J. Dreyer*

Lauren J. Dreyer
Jamie R. Lynn
BAKER BOTTS L.L.P.
700 K Street NW
Washington, DC 20001
(202) 639-7700 (telephone)
(202) 639-7890 (facsimile)
lauren.dreyer@bakerbotts.com
jamie.lynn@bakerbotts.com

G. Hopkins Guy III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA 94304
(650) 739-7500 (telephone)
(650) 739-7699 (facsimile)
hopkins.guy@bakerbotts.com

Spencer Packard
BAKER BOTTS L.L.P.
910 Louisiana
Houston, TX 77002
(713) 229-1888 (telephone)
(713) 229-7788 (facsimile)
spencer.packard@bakerbotts.com

*Attorneys for Amicus Curiae
DISH Network L.L.C.*

# CERTIFICATE OF COMPLIANCE

This Brief of Amici Curiae is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b)(1).  The brief contains 3892 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b).  This Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 Point.

Dated:  November 30, 2022          Respectfully submitted,


By: */s/ John W. Thornburgh*
John W. Thornburgh
FISH & RICHARDSON P.C.
12860 El Camino Real
San Diego, CA 92130
Telephone: 858-678-5070
thornburgh@fr.com

*Attorneys for Amici Curiae*
*Power Integrations, Inc.,*
*ASSA ABLOY AB, ASSA ABLOY Inc.,*
*August Home, Inc., and HID Global*
*Corporation*